**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH DIVISION)**

**CASE NO. _____-CIV (\_\_\_/\_\_\_\_)**

ADVANCE BUSINESS CAPITAL LLC
d/b/a TRIUMPH BUSINESS CAPITAL,
a Delaware limited liability company,

     Plaintiff,

v.

UNITED STATES POSTAL SERVICE, an
Independent Establishment of the Executive
Branch of the Government of the
United States,

     Defendant.

_____/

## <u>ACTION FOR A DECLARATORY-JUDGMENT AND SUPPLEMENTAL RELIEF</u>

 Plaintiff Advance Business Capital LLC d/b/a Triumph Business Capital, a Delaware limited liability company ("**Triumph**"), by and through its undersigned counsel, as successor-in-interest by asset acquisition to Covenant Transport Solutions, LLC d/b/a Transport Financial Solutions ("**Covenant**"), hereby sues the Defendant, United States Postal Service ("**Postal Service**"), for a Declaratory-Judgment, pursuant to 28 U.S.C.A. § 2201 and 2202 and Fed.R.Civ.P. 57, and as grounds therefore avers as follows:

**I.** **<u>Allegations Pertaining to Jurisdiction</u>**

 1. This Court has subject matter jurisdiction over this case pursuant to 39 U.S.C.A. §409(a), which provides that "Except as otherwise provided in [title 39], the United States district courts shall have original, but not exclusive, jurisdiction over all actions brought by or against the Postal Service."

2.      The dispute between the Postal Service and Triumph, in respect to which Triumph seeks a declaratory judgment, is one that is neither controlled nor governed by the Contract Disputes Act of 1978 ("**CDA**") (41 U.S.C.A. §§ 7101 to 7109 which, prior to 2011, was located at 41 U.S.C.A. §§ 601-613).  Although the CDA  is applicable to the Postal Service, the CDA requires that a "contractor," as defined by 41 U.S.C.A. § 7101(7) means "a party to a Federal Government contract other than the Federal Government," that holds a "contractor claim" who, among other things, may submit a claim to the contracting officer for a decision.  The subject matter of this action does not involve a contractor claim, but instead, involves the payment of monies that belonged to Triumph and were instead wrongfully diverted to the Postal Service's contractors, Postal Fleet Services, Inc. ("**PFS**") and The Stageline Company ("**Stageline**"), after Triumph paid purchase price payments to PFS and Stageline in order to purchase the accounts and all proceeds due in connection therewith and after the Postal Service recognized Triumph as the party entitled to receive and/or to whom all such payments would be made, as assignee.

3.      In addition, the subject matter of this action fails to involve, as between Triumph and the Postal Service, a contract claim under the "Tucker Act" (28 U.S.C. § 1491) since Triumph is not in privity with the Postal Service under an express or implied-in-fact contract; instead, Triumph's rights are based upon its right to pursue the Postal Service due to the Postal Service having reneged on its duty to pay Triumph after the Postal Service's receipt of a Notice of Assignment which was not contested and instead honored, evidencing Triumph's right to receive payment of accounts as an assignee of the Postal Service's contractors, PFS and Stageline.

## II.    Allegations Pertaining to Venue

4.      Pursuant to 39 U.S.C.A. § 409(b), title 28, relating to venue and the rules of procedure adopted under title 28 for suits against the United States shall apply in like manner to

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

suits in which the Postal Service is a party.

5.      Pursuant to 28 U.S.C.A. § 1391(a)-(c), venue for this action is proper in this district court since the Postal Service is subject to this Court's personal jurisdiction with respect to this civil action and, being that there is more than one judicial district in this state, the Postal Services' contracts within this judicial district are sufficient to subject it to personal jurisdiction in this district if this district were a separate state.

III.    **The Parties**

6.      Triumph is a Delaware limited liability company, with its principal place of business located in Dallas County, Texas.

7.      The United States Postal Service, pursuant to 39 U.S.C.A. § 201, was recognized as an independent establishment of the executive branch of the Government of the United States ("**Federal Government**").

8.      Although the Postal Service, as a branch of the federal government, ordinarily would be entitled to sovereign immunity from lawsuits, that immunity was expressly waived by 39 U.S.C.A. § 401(1), which provides that "Subject to the provision of section 404a, the Postal Service shall have the following general powers: (1) to sue and be sued in its official name, …"[1]

9.      This waiver of sovereign immunity has been held and/or characterized by courts as both broad and liberally construed, which has resulted in claims of promissory estoppel being held as proper and cognizable against the Postal Service based on the general waiver of sovereign immunity under 39 U.S.C.A. § 401.

10.     Consistent with the unique status that the Postal Service holds as an agency of the Federal Government, that being an independent federal agency that enters into the commercial

---

[1] The statute also provides, *inter alia*, that the Postal Service settles and compromises claims by or against it.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

marketplace and competes with private mail carrier organizations, Congress removed from the Postal Services' domain certain statutory protections that would otherwise be available to it.  For example, pursuant to 39 U.S.C.A. § 410(a) and (b), Congress precluded the Postal Service's right to require financial institutions to comply with what is commonly referred to as the Federal Assignment of Claims Act of 1940 (31 U.S.C.A. § 3727 and 41 U.S.C.A. § 6305, formerly cited as 41 U.S.C.A. § 15).  39 U.S.C.A. § 410(a) reads as follows:

> (a) Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, **no Federal law dealing with public or Federal contracts**, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, **shall apply to the exercise of the powers of the Postal Service**.[2, 3]

(Bolding supplied).

---

[2] Subsection (b) of the statute, did make other, albeit unrelated provisions in title 41 (Chapters 65 and 67), applicable to the Postal Service.  39 U.S.C.A. §(b) makes only the following federal statutory provisions applicable to the Postal Service:

> (1) section 552 (public information), section 552a (records about individuals), section 552b (open meetings), section 3102 (employment of personal assistants for blind, deaf, or otherwise handicapped employees), section 3110 (restrictions on employment of relatives), section 3333 and chapters 72 (antidiscrimination; right to petition Congress) and 73 (suitability, security, and conduct of employees), and section 5520 (withholding city income or employment taxes), and section 5532 (dual pay) of title 5, except that no regulation issued under such chapters or section shall apply to the Postal Service unless expressly made applicable;
> (2) all provisions of title 18 dealing with the Postal Service, the mails, and officers or employees of the Government of the United States;
> (3) section 107 of title 20 (known as the Randolph-Sheppard Act, relating to vending machines operated by the blind);
> (4) the following provisions of title 40:
> (A) sections 3114-3116, 3118, 3131, 3133, and 3141-3147; and
> (B) chapters 37 and 173;
> (5) chapters 65 and 67 of title 41;
> (6) sections 2000d, 2000d-1--2000d-4 of title 42 (title VI, the Civil Rights Act of 1964);
> (7) section 19 of the Occupational Safety and Health Act of 1970 (29 U.S.C. 668);
> (8) the provisions of the Act of August 12, 1968 (42 U.S.C. 4151-4156);
> (9) chapter 39 of title 31;
> (10) the Inspector General Act of 1978; and
> (11) section 5520a of title 5.

[3] The rules of law and regulations as referenced in 39 U.S.C.A. § 410(a) of the Postal Service are more specifically identified in 39 C.F.R. § 211.2(a)(1)-(3).

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

11.     Over 45 years ago, the Postal Service sought to have the Second Circuit Court of Appeals restrict its broad sovereign immunity waiver in respect to an effort to exclude the Postal Service from having to respond to garnishment writs or proceedings.  The court in Beneficial Fin. Co. of N.Y. v. Dallas, 571 F.2d 125 (2nd Cir. 1978) concluded that the Postal Service's requested restriction was unwarranted on the basis that responding to such writs would not "gravely interfere[e] with any United States Postal Service function."

IV.     **The Underlying Factoring Relationship Between Triumph and PFS and Stageline, the Companies who sold their Accounts to Triumph and PFS and Stageline's Defaults.**

A.      **The Factoring Agreement Between Triumph and PFS.**

12.     On June 1, 2018, PFS entered into an agreement with Covenant titled, "Factoring and Security Agreement" (hereinafter, as amended, supplemented and/or restated, including certain Schedules (the **PFS Factoring Agreement**"). A true and correct copy of the PFS Factoring Agreement is attached hereto as **Exhibit 1.**

13.     In accordance with the PFS Factoring Agreement, PFS could offer to Covenant Accounts which Covenant had the right to purchase by paying a "Purchase Price" after which the Accounts become purchased accounts belonging to Covenant (the "**PFS Purchased Accounts**").

14.     The PFS Purchased Accounts arose from surface freight motor carrier transportation services provided by PFS to the United States Postal Service under contracts commonly identified as Highway Contract Transportation and Dynamic Route Optimization (the "**Underlying Postal Service Agreements**").

15.     Covenant duly perfected its first priority ownership in the PFS Purchased Accounts and first priority security interest in Collateral, including, but not limited to, all Accounts, as defined in Section 1.9 of the PFS Factoring Agreement (the "**PFS Collateral**"), by having caused a UCC-1 financing statement to be filed in the state of PFS's formation, that being the Delaware

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Department of State, naming PFS, as debtor, and bearing filing number 20183786577 ("**PFS UCC-1 Financing Statement**"). A true and correct copy of the PFS UCC-1 Financing Statement is attached hereto as **Exhibit 2.**

16.     On or about July 23, 2020, as detailed in Section IV C below, Triumph as the successor-in-interest to Covenant's rights under the PFS Factoring Agreement by asset sale, caused a UCC Financing Statement Amendment to be filed with the Delaware Department of State, changing the secured party of record under the PFS UCC-1 Financing Statement from Covenant to Triumph, which filing was assigned number 20205060027.  A true and correct copy of the PFS UCC-1 Financing Statement is attached hereto as **Exhibit 3**.

**B.      The Factoring Agreement Between Triumph and Stageline.**

17.     On March 23, 2020, Stageline entered into an agreement with Covenant titled, "Factoring and Security Agreement" (hereinafter, as amended, supplemented and/or restated, including certain Schedules (the "**Stageline Factoring Agreement**") (the Stageline Factoring Agreement and the PFS Factoring Agreement shall hereinafter be referred to collectively as the "**Factoring Agreements**"). A true and correct copy of the Stageline Factoring Agreement is attached hereto as **Exhibit 4.**

18.     In accordance with the Stageline Factoring Agreement, Stageline could offer to Covenant Accounts which Covenant had the right to purchase by paying a "Purchase Price" (the "**Stageline Purchased Accounts**").

19.     The Stageline Purchased Accounts arose from surface freight motor carrier transportation services provided by Stageline to the United States Postal Service under contracts commonly identified as Highway Contract Transportation and Dynamic Route Optimization (the "**Underlying Postal Service Agreements**").

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

20.     Covenant duly perfected its first priority ownership in the Stageline Purchased Accounts and first priority security interest in Collateral, including, but not limited to, all Accounts, as defined in Section 1.9 (the "**Stageline Collateral**"), by having caused a UCC-1 financing statement to be filed in the state of Stageline's formation, that being the Iowa Secretary of State, naming Stageline, as debtor, and bearing filing number X20027920-1 ("**Stageline UCC-1 Financing Statement**"). A true and correct copy of the Stageline UCC-1 Financing Statement is attached hereto as **Exhibit 5.**

21.     On or about July 28, 2020, as detailed in Section IV C below, Triumph as the successor-in-interest to Covenant's rights under the Stageline Factoring Agreement by asset sale, caused a UCC Financing Statement Amendment to be filed with the Iowa Secretary of State, changing the secured party of record under the Stageline UCC-1 Financing Statement from Covenant to Triumph, which filing was assigned number P20001880-5.  A true and correct copy of the Stageline UCC-1 Financing Statement is attached hereto as **Exhibit 6.**

    **C.**     **The Notices of Assignment and Requests to Receive Payment issued to the Postal Service by Triumph (and Covenant) giving notice that PFS and Stageline each Assigned to Triumph the right to receive payment for all amounts due in respect to the Accounts that arose under the Underlying Postal Service Agreements.**

22.     The Factoring Agreements in section 8 entitled "Authorization to Purchaser/Power of Attorney," each states, in relevant part, as follows:

    (a) Section 8.1. Seller [PFS/Stageline] hereby irrevocably authorizes Purchaser [Covenant], its successors and assigns [Triumph], at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

    (b) 8.1.7. **notify any Account Debtor**[4] **obligated with respect to any Purchased Account**, that the underlying Purchased Account has been assigned to

---

[4] Under the Uniform Commercial Code ("**UCC**") 9-102(a)(3), the term "Account Debtor" means, among other things, a person obligated on an account. Moreover, the term "person" under Section 1-201(3) of the UCC includes an

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser.

(c)  Section 8.5. **Seller authorizes Purchaser to affix an electronic version of the signature of an authorized representative of Seller to any notification of assignment or other communication sent by Purchaser to an Account Debtor**.

(Bolding supplied.)

23.    The Factoring Agreements in Section 10.3, sates:

(a)  Before sending **any Invoice** to an Account Debtor [Postal Service], Seller shall mark same with a notice of assignment as illustrated below:

> **NOTICE**
> This invoice has been assigned, is owned by
> and only payable to:
> **TRANSPORT FINANCIAL SOLUTIONS**
> **P. 0. BOX 845981**
> **DALLAS, TX 75284-5981**
> If this invoice is not found to be correct in all
> respects notify TFS at once. Your Failure to object
> to this invoice within 5 business days of receipt
> shall constitute a waiver of those objections.
> **PHONE (800)358-2618 · FAX (423)825-7631**

(Bolding supplied.)

24.    As authorized by the PFS Factoring Agreement, Covenant, in 2018, delivered one or more letters to the Postal Service entitled "Notices of Assignment" addressed to the Postal Service contracting officer responsible for PFS's account, which read as follows:

**NOTICE OF ASSIGNMENT**

To: Jewell Powell, Contracting Officer

This has reference to Contract Number (s) more particularly described on Exhibit "A" attached and made apart hereto, entered into between Postal Fleet Services Inc, 2808 North 5th Street Suite 501, ST Augustine, FL 82084, and United Postal Service, for Mail/Parcel Transfer.

---

individual and an organization.  The term "organization" is defined by Section 1-201(28) to mean and include a "corporation, government or governmental subdivision or agency . . .".

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Moneys due or to become due under the contract described above have been assigned to the undersigned under the provisions of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41 U.S.C. 15.[5]

A true copy of the instrument of assignment executed by the Contractor on _____ 2018, is attached to the original notice.

Payments due or to become due under this contract should be made to the undersigned assignee.

Please return to the undersigned the three enclosed copies of this notice with appropriate notations showing the date and hour of receipt, and signed by the person acknowledging receipt on behalf of the addressee.

Very truly yours,

Transport Financial Solutions
400 Birmingham Highway
Chattanooga, TN 37419

**Acknowledgement**

Receipt is acknowledged of the above notice and of a copy of the instrument of assignment. They were
received __ (a.m.) (p.m.) on _____ , 2018.

By:
Jewel Powell, Contracting Officer USPS

(the "**Notice of Assignment**").

25.      Likewise, Covenant delivered one or more Notices of Assignment letters to the

Postal Service addressed to the Postal Service contracting officer responsible for Stageline's

account in a form similar to the above Notice of Assignment.

26.      The Postal Service acknowledged Covenants Notice(s) of Assignment by having

signed one or more of Covenants Notice(s) of Assignment under the "Acknowledgment".

---

[5] This reference was a misnomer by Covenant since, as noted above, the Assignment of Claims Act of 1940, as amended, are statutes that have been made inapplicable to the Postal Service.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

27.     As a result of the Postal Service's receipt of Covenant's Notice of Assignment, beginning on or about July 2018, and continue thereafter, the Postal Service commenced remitting payments due on Accounts owing to PFS and/or Stageline to Covenant's lockbox account, the method of payment used by the Postal Service was either physical check and/or electronic funds transfer to Covenant's bank deposit account.

**D.     Triumph's Asset Acquisition of the PFS and Stageline Factoring Relationships from Covenant.**

28.     On or about July 8, 2020, Triumph, as buyer, and Covenant, as seller, entered into an Accounts Receivable Purchase Agreement whereby Triumph acquired certain "Purchased Assets" which assets included all "Receivables" set forth on a Schedule 2.1(a), all "Contracts" pursuant to which Covenant acquired the Purchased Receivables (which includes the Factoring Agreements, the PFS UCC-1 Financing Statement, and the Stageline UCC-1 Financing Statement) set forth on a Schedule 2.1(c), all rights, Claims and credits, including all guarantees, warranties, indemnities, Orders and demands of any nature and similar rights, whether or not currently being pursued, in favor of Covenant, to the extent related to any Purchased Receivable or to any Assumed Liability.[6]

29.     As of and after July 8, 2020, Triumph, on the one hand and as the successor to Covenant, and PFS and Stageline on the other hand, operated under the PFS Factoring Agreement and the Stageline Factoring Agreement, respectively, by, *inter alia*, doing the following:

---

[6] The term "Receivables" in the Accounts Receivable Purchase Agreement was defined as the monetary obligations of an Obligor arising under a Contract between a Customer and such Obligor and evidenced by an Invoice (including the right to receive payment of any interest or finance charges or other liabilities of such Obligor under such Contract), all Related Assets with respect thereto, and all collections and other proceeds with respect to the foregoing, which obligations have been purchased and acquired by Seller pursuant to a Factoring Agreement entered into between Seller, as purchaser, and the Customer thereunder.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

    a. Both PFS and Stageline offered Accounts to Triumph after which Triumph provided PFS and Stageline purchase price advances and which Accounts became Purchased Accounts,

    b. Triumph issued one or more written Notices of Assignment[7] and demand for payment to the Postal Service, giving notice of Triumph's rights, as successor to Covenant of Triumph's right to receive payment of all Accounts that would otherwise be payable to PFS or Stageline,

    c. Triumph caused one or more UCC-3 amendments to be filed evidencing that Triumph supplanted Covenant as the secured party of record of PFS in respect to the PFS UCC-1 Financing Statement, and

    d. Triumph caused one or more UCC-3 amendments to be filed evidencing that Triumph supplanted Covenant as the secured party of record in respect to the Stageline UCC-1 Financing Statement.

30. As a result of Triumph's acquisition from Covenant of the PFS Factoring Agreement and the Stageline Factoring Agreement, on or about July 22, 2020 and July 24, 2020, Triumph issued to the Postal Service letter entitled "Updated and Revised Notice of Assignment" notifying the Postal Service that effective July 8, 2020, Covenant had:

> . . . sold, transferred and assigned to Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph"), a Delaware limited liability company in good standing with headquarters located at 651 Canyon Drive, Suite 105, Coppell, Texas 75019, all of its rights under its factoring relationships with Client, including all of the now existing invoices, as well as all future invoices you will receive from client.
>
> Attached as Exhibit "A" is a list of all contracts assigned to TFS [i.e., Covenant] from your Client together with the applicable Instrument of

---

[7] A notice of assignment and demand for payment is a form regularly used by parties, who are assignees, that get assigned another party's (assignor) right to receive payment of accounts, chattel paper and/or general intangibles, and are expressly recognized by Article 9 of the Uniform Commercial Code pursuant to Section 9-406.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Assignment of Claims. Moneys due or to become due under the contracts described in Exhibit "A" from the United States of America, or from any department or agency thereof, have been assigned to Triumph under the provisions of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. 3727, 41 U.S.C. 15. TFS hereby irrevocably authorizes and directs the disbursing office of the United States of America or department or agency thereof to make payment to Triumph of moneys due or to become due to Client under said contracts and further releases the United States Postal Service from any and all obligation to make any future payment under said contracts to TFS (See Exhibit "B" TFS Release).

The following new remittance instructions supersede any other remittance instructions you may have previously received, including any other remittance address contained on the Client's invoices or on any purchase orders. **Please direct any and all payments to: Triumph Business Capital…**

("**Triumph's Updated Notices of Assignment**").   A copy of each of the Triumph's Updated Notices of Assignment are attached hereto as **Exhibits 7 and 8**.

31.     After the Triumph's Updated Notices of Assignment were issued by Triumph to the Postal Service, the Postal Service, after having had a reasonable time to determine the validity of the Triumph's Updated Notices of Assignment, failed to object or reject either of the Triumph's Updated Notices of Assignment.

32.     Indeed, after delivery of the Triumph's Updated Notices of Assignment, Triumph, with the assistance of Covenant, delivered documents to the Postal Service which served to authorize Triumph to receive the amounts the Postal Service would pay under the Underlying Postal Service Agreements to Triumph via Electronic Funds Transfer.  A copy of the Supplier and Payee Electronic Funds Transfer Enrollment Forms for both PFS and Stageline were duly executed by PFS and Stageline by and through their CFO and President, Craig Gregory, and expressly authorized Triumph to receive all such payments.  A copy of each Supplier and Payee Electronic Funds Transfer Enrollment Form is attached hereto as **Exhibits 9 and 10**.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

33.     Notwithstanding that the Postal Service never expressly acknowledged the Triumph's Updated Notices of Assignment by executing same, the Postal Service impliedly and/or expressly honored the Triumph's Updated Notices of Assignment by having commenced remitting payments to Triumph's lock box account and Triumph applied such payments received from the Postal Service to satisfy PFS' and Stageline's monetary obligations under the PFS Factoring Agreement and the Stageline Factoring Agreement, respectively.

34.     More specifically, beginning on or about August 28, 2020, pursuant to Triumph's Updated Notice of Assignment, the Postal Service commenced making payments directly to Triumph of amounts due for PFS and Stageline Accounts and between August 28, 2020 and November 3, 2020, Triumph received approximately 965 payments directly from the Postal Service on both PFS and Stageline Accounts totaling approximately $36 million.

**E.      The Postal Service's decision, in cooperation with PFS and Stageline, to unilaterally, and without the knowledge or consent of Triumph, misdirect millions of dollars of payments and Proceeds of Accounts to PFS and Stageline, instead of paying the rightful owner and secured party, Triumph.**

35.     Approximately late September and/or early October 2020, Triumph began to discover, without having been informed by either the Postal Service or PFS or Stageline, that the Postal Service, upon the unauthorized and wrongful request of PFS and Stageline, commenced to ignore the procedure that had been established first between the Postal Service and Covenant and thereafter established by and between the Postal Service and Triumph and, instead, the Postal Service redirected Account Proceeds payments due only to Triumph to PFS and Stageline, all of which Accounts were either sold to Triumph, or were Accounts that Triumph held a duly perfected and first priority security interest.[8]

---

[8] Section 1-201 of the UCC defines the term "security interest" to mean an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

36.     Once Triumph realized that this intolerable situation arose and that Triumph was now being subjected to millions of dollars in losses while the Postal Service was permitting PFS and Stageline to receive payment, twice, for the same Accounts (first, by PFS and Stageline having received the purchase price advances PFS and Stageline received from Triumph and second, by PFS and Stageline's wrongful misappropriation of the payments of the Accounts made by the Postal Service that belonged to Triumph), counsel to Triumph issued a letter to the Postal Service, in as professional and polite manner as possible, in an effort to immediately rectify the drastically damaging actions taken by the Postal Service to redirect and reroute Account Proceeds payments to PFS and Stageline that were otherwise due and owing to Triumph.  A copy of the letter issued to the Postal Service is attached hereto as **Exhibit 11**.

37.     Some two weeks later, the Postal Service responded to the October 8th letter and took the position that its actions were in some way justified by alleging that: no privity of contract existed between the Postal Service and Triumph, that the Postal Service is not governed by the Federal Assignment of Claims Act, that the Postal Service's own contractual Assignment Clause 4-1(b) contained within its Standard Terms and Conditions of each contract controlled and that unless the exact form and method of delivery of any assignment of the right to receive payment was followed, the assignment that Triumph provided would now be treated as invalid and would no longer be recognized.

38.     Moreover, the Postal Service took the position that "any payments previously made to Triumph . . . were made in error, and not due to an extension of the now expired TFS assignment

---

buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9.

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

or any new assignments directly to Triumph."  A copy of the Postal Service's October 22, 2020 letter is attached hereto as **Exhibit 12**.

>   **F.   The Law that generally governs all persons involved in any assignment of the right to receive payment of accounts and who are not otherwise expressly governed by the Federal Assignment of Claims Act, of 1940, as Amended.**

39.     As applied to the Postal Service, actions and disputes between the Postal Service and other parties in some circuits have resulted in the application of state law, as opposed to some federal common law, while in other circuits, the issue is undecided, and often-times, the application of both federal common law and state law lend to the same result.

40.     The principal purpose of determining whether federal common law or state law should apply is concern for nationwide uniformity.  The issue of uniformity, insofar as the right of a party to assign its right to receive payment of accounts, is, under state law, completely and uniformly controlled by principally two statutes under the Uniform Commercial Code: those being 9-406 subsections (a)-(d) and (f) and 9-607[9] (in conjunction with 9-601 (a)) each of which read as follows:

>   9-406 DISCHARGE OF ACCOUNT DEBTOR; NOTIFICATION OF ASSIGNMENT; IDENTIFICATION AND PROOF OF ASSIGNMENT; RESTRICTIONS ON ASSIGNMENT OF ACCOUNTS, CHATTEL PAPER, PAYMENT INTANGIBLES, AND PROMISSORY NOTES INEFFECTIVE.
>
>   (a) . . . account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. **After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor**.
>
>   (b) . . . notification is ineffective under subsection (a):

---

[9] Both of these statutes have generally been adopted by each state in their uniform form, however, some states have adopted these statutes with some variations including the adoption of subsection (d) but not subsection (f).

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

(1) if it does not reasonably identify the rights assigned;

(2) to the extent that an agreement between an account debtor and a seller of a payment intangible limits the account debtor's duty to pay a person other than the seller and the limitation is effective under law other than this article; or

(3) at the option of an account debtor, if the notification notifies the account debtor to make less than the full amount of any installment or other periodic payment to the assignee, even if:

> (A) only a portion of the account, chattel paper, or payment intangible has been assigned to that assignee;

> (B) a portion has been assigned to another assignee; or

> (C) the account debtor knows that the assignment to that assignee is limited.

(c) . . . if requested by the account debtor, an assignee shall seasonably furnish reasonable proof that the assignment has been made. Unless the assignee complies, the account debtor may discharge its obligation by paying the assignor, even if the account debtor has received a notification under subsection (a).

(d) . . . a term in an agreement between an account debtor and an assignor or in a promissory note is ineffective to the extent that it:

> (1) prohibits, restricts, or requires the consent of the account debtor or person obligated on the promissory note to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account, chattel paper, payment intangible, or promissory note; or

> (2) provides that the assignment or transfer or the creation, attachment, perfection, or enforcement of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the account, chattel paper, payment intangible, or promissory note.

*          *          *

(f) . . . a rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, or account debtor to the assignment or transfer of, or creation of a security interest in,

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation:

> (1) prohibits, restricts, or requires the consent of the government, governmental body or official, or account debtor to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in the account or chattel paper; or
> (2) provides that the creation, attachment, perfection, or enforcement of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the account or chattel paper.

(Bolding supplied.)

*          *          *

§ 9-607. COLLECTION AND ENFORCEMENT BY SECURED PARTY.

(a) If so agreed, and in any event after default, a secured party:

> **(1) may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;**
> (2) may take any proceeds to which the secured party is entitled under Section 9-315;
> **(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral . . .**

(Bolding supplied.)

**G.     PFS and Stageline's Breach of the Factoring Agreements and its joint action with the Postal Service to cause the Postal Service to misdirect millions of dollars of payments and Proceeds of Accounts to PFS and Stageline, instead of paying Triumph in accordance with Triumph Notices of Assignment.**

41.     PFS, under the PFS Factoring Agreement, and likewise, Stageline, under the Stageline Factoring Agreement, made certain contractual representations, warranties and/or

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

covenants to both Covenant, and thereafter to Triumph, as Covenant's successor-in-interest, including, but not limited to, the following:

Section 8.1. Seller [PFS/Stageline] hereby irrevocably authorizes Purchaser [Covenant and Triumph], its successors and assigns, at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

8.1.7. notify any Account Debtor [Postal Service] obligated with respect to any Purchased Account, that the underlying Purchased Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser.

Section 8.5. Seller authorizes Purchaser to affix an electronic version of the signature of an authorized representative of Seller to any notification of assignment or other communication sent by Purchaser to an Account Debtor.

Section 10. **Covenants By Seller.**

Section 10.9. Seller shall hold in trust, for the benefit of Purchaser, any payment(s) received on account of a Purchased Account, and Seller shall deliver such payments, in kind, to Purchaser on the next business day following the date of receipt by Seller of the amount of any payment(s) on account of a Purchased Account.

Section 11. **Representations and Warranties.** Seller hereby represents and warrants at all times during the Term of this Agreement as follows:

11.12. Seller acknowledges and agrees that it shall have no right, title, or interest in or to any Purchased Account or the funds or instruments constituting payment in connection therewith, that the proceeds of the Account are the sole property of Purchaser, and that any use or interference with said proceeds by Seller may result in criminal and civil liability, and any Payments received by Seller on account of the Purchased Accounts are to be received and held in trust for the sole benefit of Purchaser.

(hereinafter, the above bullet points are collectively referred to as, "**Representations, Warranties and Covenants**").

42.     In PFS and Stageline willfully and intentionally breached and interfered with Triumph's sole and exclusive right to collect the  PFS Purchased Accounts and the Stageline

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Purchased Accounts from the Account Debtor, the Postal Service, after Covenant's/Triumph's issuance of Notice of Assignment to the Postal Service.

43. Moreover, in violation of Sections 10.9 and 11.12 in the Factoring Agreements, PFS and Stageline, collectively:

    a. induced and/or actively sought to cause the Postal Service's diversion and misdirection of millions of dollars of payments and proceeds due on Purchased Accounts (and non-Purchased Accounts which constitutes part of Triumph's collateral) to PFS and/or Stageline, instead of paying Triumph in accordance with Triumph's Updated Notices of Assignment,

    b. announced openly their intent to retain all such misdirected payments and proceeds of Accounts ("**Proceeds of Accounts**") that have been and will be paid, constituting the sole property of Triumph,

    c. willfully and materially disregarded their obligation to hold such Postal Service Payments (i.e., Proceeds of Accounts), in trust, for the sole benefit of Triumph, and remit same to Triumph in accordance with the Factoring Agreements, and instead having wrongfully retained the misdirected and diverted Proceeds of Accounts, and

    d. acknowledged to PFS having already received at least $2,243,193.44 in misdirected and diverted Proceeds of Accounts, then having tendered a check to Triumph in the amount of $2,243,193.44 in order to turnover such diverted payments to Triumph, after which PFS unliterally stopped payment on the check and retained the Proceeds of Accounts that belong to Triumph and constitute Triumph's sole property.

44. Despite Triumph having made a demand to turnover to Triumph any diverted and misdirected payments and Proceeds of Accounts received by PFS and Stageline, which constitutes

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

Triumph's property, PFS and Stageline have ignored Triumph's requests and continue to exercise wrongful possession over the property in violation of Triumph's rights.

45.     The Postal Service has caused Triumph to suffer damages due to it having paid PFS on the PFS Purchased Accounts an amount totaling $18,321,547.07, and Triumph continues to suffer damages as each payment is made.

46.     The Postal Service has caused Triumph to suffer damages due to it having paid Stageline on the Stageline Purchased Accounts an amount totaling $2,227,513.88, and Triumph continues to suffer damages as each payment is made.

**H.     The Additional Facts of this Case Establishing a Case of Actual Controversy.**

47.     The circumstances that have arisen due to the actions taken by the Postal Service have created a real and substantial controversy and not a hypothetical state of facts.

48.     The controversy that has arisen is of sufficient immediacy and reality that a declaratory-judgment should be permitted.

49.     Triumph holds the requisite standing to bring this action since the proceeds of the PFS Purchased Accounts and the Stageline Purchased Accounts, as well as the PFS Collateral and the Stageline Collateral that arose from the Underlying Postal Service Agreements that have and continue to get misdirected and wrongfully paid to PFS and Stageline, are the property of Triumph under the Factoring Agreements and Triumph has and continues to suffer substantial damages.

50.     The subject matter of this dispute has not become moot and Triumph currently holds a legally cognizable interest in the outcome of this action.

51.     The significance of the issues applicable to this action are such that this Court should, after considering the needs of Triumph and the consequences of giving desired relief,

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

exercise jurisdiction over this case, especially in light of the need to clarify the legal relationship between Triumph and the Postal Service and Triumph's rights in connection therewith.

## **PRAYER FOR RELIEF**

WHEREFORE, Triumph seeks a declaratory-judgment and, in connection therewith, Triumph seeks to have the Court determine, among other things, the following issues:

(a)  Whether any applicable federal common law exists and controls in connection with the legal issues relating to the Postal Service's unauthorized and unilateral decision to ignore Triumph's rights to receive payment of all amounts due and payable to Triumph as PFS and Stageline's assignee of their right to receive payment first to Covenant and then to Triumph, as Covenant's successor due to the asset acquisition agreement;

(b)  In connection with (a) above, whether, if there is any applicable federal common law, must this Court conclude that there is a persuasive reason to use federal common law and do considerations of uniformity of legal obligations favor the application of state rather than federal law;

(c)  Regardless of which law substantively controls, whether the Postal Service, due to its uniquely held waiver of sovereign immunity must honor a notice of assignment delivered to the Postal Service that is applicable to a contractor's right to receive payments of accounts absent a finding that a section of the United States Constitution or a federal statute, or that the United States Congress enacted restricts the waiver, or, that a broad reading of the waiver would interfere with an the ability of the Postal Service to properly function;

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

(d)    Whether the Postal Service had and has the right to rely upon its Service Supply Principles as regulations as a basis for refusing to honor Triumph's Updated Notices of Assignment and, in connection therewith, whether such Service Supply Principles may be given the force and effect of any binding regulation on third-parties, such as Triumph;

(e)    Whether, if the Postal Service initially had a right to refuse to comply with PFS and Stageline's assignment of their right to receive payment due and owing for motor carrier surface freight transportation services each provided to the Postal Service under the Underlying Postal Service Agreements, the Postal Service waived its right or should be held estopped to assert any right, to refuse to honor those assignments after having approved those assignments to Triumph's predecessor-in-interest, Covenant, and after having later honored Triumph's rights to receive payment, without objection;

(f)    Whether the Postal Service is liable to Triumph for all damages that Triumph has suffered due to the Postal Service having reversed its actions after having paid Triumph millions of dollars in Account Proceeds and having unilaterally and without Triumph's knowledge or consent redirected payments on accounts that were exclusively payable to Triumph and having re-routed payment, without Triumph's knowledge or consent, to PFS and Stageline;

(g)    A determination of the amount of accounts that were paid by the Postal Service to PFS and Stageline in order to quantify the amount of damages that Triumph has suffered;

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581

(h)     To the extent that the Court has sufficient time available on its calendar to do so, Triumph respectfully requests that the Court order expedited discovery and a speedy hearing of this declaratory-judgment action, and that the Court permit such further necessary or proper relief, after reasonable notice and hearing, against the Postal Service; and

(i)     That the Court give Triumph the right to amend this Complaint in the event any portion of this Complaint is, for whatever reason, subject to dismissal.

Dated: December 3, 2020.

Respectfully submitted,

ULLMAN & ULLMAN, P.A.
*Attorneys for Triumph Business Capital*
2500 West Military Trail, Suite 100
Boca Raton, Florida 33431
Telephone: (561) 338-3535
Facsimile:  (561) 338-3581


BY:   _/s/ Michael W. Ullman_____
        MICHAEL W. ULLMAN
        Florida Bar No. 259667
        Email: michael.ullman@uulaw.net
        JARED A. ULLMAN
        Florida Bar No. 90500
        Email: jared.ullman@uulaw.net

**ULLMAN & ULLMAN, P.A.**
2500 North Military Trail, Suite 100, Boca Raton, FL 33431
(561) 338-3535 · (561) 338-3581